————o————

STATE OF MISSOURI, *ex rel.* CURATORS OF·THE UNIVERSITY OF THE STATE OF MISSOURI, Relators, *vs.* THOMAS HALLIDAY, STATE AUDITOR, Respondent.

1. *State University—Annuity for—Statute of limitation—Fund, how affected by.* —Under the act of March 11th, 1867 (Sess. Acts 1867, p. 9) a certain proportion of the State revenue was set aside annually for the support of the State University. In *mandamus* against the State Auditor to compel a payment of the annuity for the five years next preceding, *held*, that the claim was not barred by the limitation of two years contained in the statute, relating to the Treasury Department. (Wagn. Stat., 1336, § 24.) That annuity is not one of those adverse claims contemplated by the statute, requiring a presentation of "the evidence that proves or supports them," but a gratuitous fund set apart by the State, and the amount of which is peculiarly within the knowledge of the State Auditor.

*Petition for Mandamus.*

*John H. Overall,* for Relators.

I. This is not such a claim as is required to be "exhibited to the State Auditor for allowance, supported by the evidence thereof, (Limitation Act, Wagn. Stat., 1336, § 24) because :" 1. It is one peculiarly within his knowledge, and of which no one can have information, except through him. (Wagn. Stat., 1257, § 75.) 2. It is his duty to draw his warrant for the amount found by him to be due the University.

This fund is declared to belong to the University, and is to be paid like "other funds of the University" (Sess. Acts 1867, p. 9, § 2). The only "other funds of the University" are the seminary funds, and the duties of the auditor relating thereto are similar to those touching the public school funds. (Wagn. Stat., 1289, § 6.) The school fund is payable "on the warrant of the auditor * * immediately after the apportionment of such monies shall have been made and filed." (Wagn. Stat., 1257, § 77.) Here the apportionment is ascertained by the act of March 10th, 1867 (Sess. Acts 1867, p. 9).

II. As one and three-fourths per cent of the State revenue, after first deducting twenty-five per cent., is, by law, "declared to belong to the University," the amounts not yet paid to the University are held in trust for it, and the statute of limitations cannot bar the claim of a *cestui que trust* against the trustee. (Marquis Cholomondeley vs. Lord Clinton, 2 Jac. & Walker Ch. R., 1; Baker vs. Whiting 3 Sumn., 486; Kane vs. Bloodgood, 7 Johns. Chy., 90.)

*John A. Hockaday, Att'y Gen'l*, for Respondent.

I. The relators should have presented their claim to the State Auditor and demanded a warrant within two years after the same accrued. (Wagn. Stat., 1336, § 24.)

II. This statute is general in its application, and affects corporations as well as individuals. (State *ex rel.* Johnson vs. State Auditor, 48 Mo., 56; Callaway county vs. Nolley, 31 Mo., 393; St. Charles County vs. Powell, 22 Mo., 525; 26 Mo., 453; 8 B. Monr., 259; 8 Ohio, 309; 4 Dev., N. C., 569.)

III. The act of March, 1867, (Sess. Acts 1867, p. 9) provides that the fund claimed by relators "shall be paid to the Treasurer of the Board of Curators as provided by law for the payment of other funds of the University." And § 12, p. 1290, Wagn. Stat., provides that funds belonging to the University shall be paid to the treasurer of the Board of Curators. But, as to the mode of auditing and payment, the statute is silent. The necessary inference is, that they must be audited and paid as other claims upon the treasury, as provided in the statute. (Wagn. Stat., 1334, § 13; 1337, §§ 26, 27.)

IV. The treasurer is the custodian of this, as of all other State funds, and not the Auditor as claimed by relators; hence the Auditor is not a trustee in the sense claimed, but simply controls the disbursement of the fund. If he be a trustee for one part of the State revenue, he becomes such for all of it, and the statutory bar of two years would be unavailing in any case.

There is but one case where the Auditor is made a trustee by express statute, for any funds, and that is under §§ 8 & 9 of the University Act (Wagn. Stat. 1290). Under this act, by direction of the commissioners of the seminary fund, it becomes his duty to invest the same in bonds of the United States. But the funds in controversy are not a part of the seminary fund; they are simply funds appropriated for the use of the University, just as the "criminal costs" fund is set apart and appropriated for that purpose, which can only be drawn upon the presentation of proper certificates and vouchers.

WAGNER, Judge, delivered the opinion of the court.

The relators filed their petition in this court on the 6th day of July, 1874, alleging that under and by virtue of an act of the General Assembly, approved March 11, 1867, they are entitled to one and three-quarters per cent. of the revenue of the State, after deducting one-fourth thereof for the public school fund; that they have received at different times certain sums of money as provided by said act, but of the amount collected on delinquent taxes for the years 1868–'69– '70–'71–'72 and '73 they have received nothing; that they have demanded of the respondent a warrant for the same, which he has refused to issue. They, therefore ask for a peremptory writ of mandamus to compel him to ascertain the amount due them, and draw his warrant on the Treasurer therefor.

For return, as a reason why the writ should not be made peremptory, the respondent states that the relators have failed to present their claim for the funds in controversy to him within two years after the same accrued, and he then sets up the statute of limitations as a bar to the proceeding.

By the second section of an act approved March 11, 1867, it is provided as follows: " There is also set aside. and appropriated annually for the support of the State University of Missouri, out of the revenue of the State, after first deducting therefrom the one-fourth of the revenue for the public school fund, one and three-quarters per cent. of such balance of the State revenue; and this is declared to belong to the University, and shall be paid to the Treasurer of the Board of Curators, as provided for by law for the payment of other funds of the University." (Sess. Acts 1867, p. 9.)

In the chapter on the organization of the treasury department, it is declared that "persons having claims against the State shall exhibit the same, with the evidence in support thereof, to the Auditor, to be audited, settled and allowed, within two years after such claims shall accrue, and not afterwards." (Wagn. Stat., 1336, § 24.)

The only question is, whether the statute of limitations is applicable to this particular case.   It is not denied, that as a general proposition the statute will run against corporations in the same manner as against natural persons.   But the law here sets apart and appropriates annually, a certain fund for the University, which is declared to belong to it, and it is paid to the Treasurer of the Board of Curators in the same manner provided by law for the payment of other funds of the University.   The law creating the University, and which donates to it the seminary fund, declares that all interest and profits of the bonds held in trust for the seminary fund shall be paid to the Treasurer of the Board of Curators, who shall be charged therewith by the State Auditor. (Wagn. Stat., 1290, § 12.)

As this is a permanent and continuing fund, and the law itself declares to whom it is payable, it will hardly be contended that if, through accident or neglect, the Treasurer of the Board should not get a warrant for two years, that therefore the Auditor would be entitled to withhold it entirely. The Auditor is the general accountant of the State, and he audits and settles claims against the State, and persons having

such claims must satisfy him of their correctness. The statute requires that those claims should be presented within two years, with the evidence that proves or supports them. But here no evidence is required; the University does not even know the amount to which it is entitled, till the auditor makes the apportionment on the basis of the amount of money received. Till that is done no definite amount can be demanded. This fund is placed upon the same foundation as the school fund, and if that was not demanded, accompanied by evidence, within two years, I do not think it would be barred. By section 75 of the law relating to schools, the regular account of the public school fund is to be kept by the Auditor, who is directed, quarterly, to certify to the State Treasurer a copy of such accounts as have not before been reported by him; and in all accounts he is required to state the amount of revenue belonging to that portion of the fund set apart for the University provided for in the Constitution, separate and apart from that belonging to the public schools.

As the fund now in controversy is not set apart by the Constitution, no statement of it as a separate University fund is required to be reported, unless it be brought within the provision of the act of 1867, requiring it to be paid as other funds of the University. Be this as it may, the fund is appropriated and set apart, and exists peculiarly within the knowledge of the State Auditor, and I am clearly of the opinion that it is not of that character of claims contemplated in the statute of limitations above referred to. It is a gift or gratuity by the State, appropriated for a particular purpose, and not an adversary claim held by a party.

I think, therefore, that the relators are entitled to the fund, and that a peremptory writ should be ordered. Judges Napton and Sherwood concur; Judges Vories and Hough absent.